## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**CARMEN I. LÓPEZ-GONZÁLEZ**,

    Plaintiff,

    v.                                                    Civil No. 13-1216 (BJM)

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

## OPINION AND ORDER

Carmen I. López-González ("López") seeks review of the Commissioner's decision finding that she is not entitled to disability benefits under the Social Security Act ("Act"), 42 U.S.C § 423, as amended, (Docket No. 1), and filed a memorandum of law in support of her position. (Docket No. 18). López asks for judgment to be reversed and an order awarding disability benefits, or in the alternative to remand the case to the Commissioner for further proceedings. The Commissioner answered the complaint (Docket No. 11) and filed a memorandum. (Docket No. 23). This case is before me on consent of the parties. (Docket No. 6, 7). After careful review of the administrative record and the briefs on file, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The court's review is limited to determining whether the Commissioner and her delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz*

*v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled.  20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982).  In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity."  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a medically severe impairment or

López-González v. Commissioner of Social Security, Civil No. 13-1216 (BJM)                    3

combination of impairments.  20 C.F.R. § 404.1520(c).  If not, the disability claim is denied.  At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1.  If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled.  If not, the evaluation proceeds to the fourth step, through which the ALJ assesses the claimant's residual functional capacity[1] ("RFC") and determines whether the impairments prevent the claimant from doing the work she has performed in the past.   If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e).  If she cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of her RFC, as well as age, education, and work experience.  If the claimant cannot, then she is entitled to disability benefits.  20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability.  *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991).   Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform.  *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that her

---

[1] An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

disability existed prior to the expiration of her insured status, or her date last insured.  *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

López was born on August 3, 1959.  She completed high school, and worked as an office clerk/secretary from 1977 to 1986.  She claims to have been disabled since October 10, 1986 (alleged onset date) due to major depression, cervical spasms, right shoulder bursitis, a hypothyroid condition, memory loss, carpal tunnel syndrome, poor blood circulation, anxiety, and insomnia.  López applied for a period of disability and disability insurance benefits on June 30, 2010, and last met the Social Security Administration's ("SSA") insured status requirements on December 31, 1991 (date last insured).  She did not engage in substantial gainful activity during this period.  She was thirty-two years old on the date last insured.  (Transcript ["Tr."] 13, 15, 16, 25-29, 200-201, 250-251, 259, 263, 267).

Dr. Andrés Martínez, general practitioner, treated López from March 12, 1986 to October 1, 1987 for chronic dorsal myositis and a nervous crisis.  He recommended rest and treatment. (Tr. 16, 57, 61-65, 311-315).  The record contains evidence of five appointments, and does not include observations or progress notes, or what constituted her treatment.

López was seen twice by Dr. Julio Mojica, psychiatrist, on October 17 and November 1, 1990.   López stated to Dr. Mojica that she felt very anxious, tense, depressed, insecure, and guilty over her history of alleged sexual harassment by two supervisors.[2]  He observed that she was tense and uneasy.  Dr. Mojica diagnosed dysthymic disorder, and prescribed medications. On November 13, 1990, Dr. Mojica submitted a Mental Impairment Evidence Report to the SSA, in which he stated that the symptoms began two years prior to his first interview.  He reported

_____

[2] Other evidence in the record indicate that she was allegedly harassed by one supervisor.

that López felt markedly depressed, anxious, guilty, and insufficient, and obsessed over depressive ideas.  However, she was oriented in person, place, and time, cooperative, and frank. Her intellectual functioning was average, with no severe impairment in her thought process.  Her recent memory was adequate (she was able to remember what happened a few hours ago or during the week), but had a slight difficulty paying attention, concentrating, and remembering remote events.  She was not able to focus or persist in a task during a complete normal work day without interruptions.   She had no social contacts, no interactions with strangers, did not participate in group activities, and tended towards isolation.   She had no history of hospitalizations for her mental condition or remissions, substance abuse, or addictive, violent or disruptive behavior.   López had not attempted to work again.   Dr. Mojica did not order laboratories or special studies to be conducted, but found that her working prognosis was poor. (Tr. 17, 32, 66-69, 270, 316-323).

López was also treated on a monthly basis in 1991 by Dr. Luis Escabí, psychiatrist.  The record contains progress notes from January 15 to December 17, 1991, which are mostly illegible.  The record states that López was depressed, forgetful, anxious, and suffered from insomnia. February progress notes indicate that she was severely depressed.  Dr. Escabí prescribed medications.  The doctor noted that she had "ups and downs," but that there was no or little improvement.  (Tr. 17, 32, 58, 70-81, 324-330).  Dr. Escabí certified that he also treated López from 1991 to 1993, and that the records were decommissioned.  (Tr. 199, 437).

López affirmed that she did not have other medical evidence because the medical files were decommissioned, and claimed that her conditions impaired her from performing daily living activities during the relevant time period, and that she suffered a prolonged emotional decompensation for which she did not receive treatment at a psychiatric hospital.  (Tr. 43, 58, 265).

There is other medical evidence in the record dated after December 31, 1991, date last insured.[3] (Tr. 82-199, 271-275, 283-284 331-380, 397-438).

An SSA employee interviewed López on July 19, 2010 for a disability report, and noted that the interview ran normally, except that López repeated things a lot, and had trouble concentrating and remembering details and dates. (Tr. 263-276).

The case was referred to Dr. Luis Rodríguez, psychiatrist, on September 21, 2010, for an assessment on the severity of López's condition based on the medical evidence in file. Dr. Rodríguez responded that there was insufficient evidence to properly assess severity. (Tr. 381-385).

The claim was denied on October 8, 2010, and upon reconsideration on February 10, 2011. (Tr. 46-48, 53-56, 200-205, 209-218). López stated on two disability reports on appeal, dated December 20, 2010 and May 4, 2011, that her conditions had not changed nor had she developed new limitations. (Tr. 282, 290-291).

López requested a hearing before an ALJ on April 29, 2011. (Tr. 219-220). The hearing was held on February 28, 2012. López testified that a former supervisor sexually harassed her, causing her emotional condition which impaired her from working. She isolated herself from others, her memory and attention were affected, was suicidal once, did not trust others, and felt fear. She also had three herniated discs in the cervical area and fibromyalgia. (Tr. 23-44, 221-249).

The ALJ issued a written decision on March 14, 2012, finding that López was not disabled under sections 216(i) and 223(d) of the Act. The ALJ found at step two of the

---

[3]The ALJ noted in the decision that there is medical evidence that was not considered because they refer to conditions after López's date last insured. (Tr. 17). A claimant is not entitled to disability benefits unless she can demonstrate that her disability existed prior to the expiration of her insured status. *Cruz Rivera,* 818 F.2d at, 97 (citations omitted).

López-González v. Commissioner of Social Security, Civil No. 13-1216 (BJM)                    7

sequential evaluation process that López had a medically determinable impairment, dysthymic disorder, but that it was not severe and did not significantly limit her ability to perform basic work-related activities for twelve consecutive months.  (Tr. 10-22).

López requested review of the ALJ's decision on May 7, 2012, which the Appeals Council denied on January 16, 2013.  (Tr. 1-9, 57-60, 307-310).

## DISCUSSION

This court must determine whether there is substantial evidence to support the ALJ's determination at step two in the sequential evaluation process.  In this case, the ALJ found that López had a medically determinable impairment, dysthimic disorder, that was not severe and did not significantly limit her ability to perform basic work functions, thus rendering her not disabled within the meaning of the Act.  (Tr. 15).  López reasons that the ALJ should have proceeded to the other steps, as per Social Security Ruling ("SSR") 85-28 and *Andrades v. Secretary of Health and Human Services*, 790 F.2d 168 (1st Cir. 1986), because the ALJ did not follow the step two *de minimis* severity standard, and the medical evidence showed that her impairment was more than slight.  (Docket No. 18, p. 2, 15-16).  The Commissioner argues that the ALJ's finding was supported by substantial evidence.  (Docket No. 23, p. 7).

The step two severity test acts as a *de minimis* screening policy for the Commissioner to screen out groundless claims that would clearly result in a finding of non-disability, even if vocational factors were considered. *McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118, 1125-1126 (1st Cir. 1986) (*citing* SSR 85-28).  Step two demands a determination of two things: (1) whether a claimant has a medically determinable impairment or combination of impairments, and (2) whether the impairments or combination of impairments is severe, that is, that significantly limits or is expected to significantly limit the ability to perform basic work-

López-González v. Commissioner of Social Security, Civil No. 13-1216 (BJM)                    8

related activities for twelve consecutive months.[4]  *Yuckert*, 482 U.S. at 140-141; 20 C.F.R. §§

404.1520(a)(4)(ii) & 404.1520(c); SSR 85-28; SSR 96-3p; SSR 96-4p.  Basic work activities are

"the abilities and aptitudes necessary to do most jobs. Examples of these include -

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b).

For claims of disability due to a mental condition, the severity standard is described more

specifically in 20 C.F.R. § 404.1520a.  There are four areas of functioning that are essential to

work: (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace,

and (4) deterioration or decompensation in work or work-like settings.  A mental impairment is

not severe if it imposes no limitation or a slight limitation on the first and second area, never or

seldom limits the third area, and never limits the fourth area.  *Figueroa-Rodríguez v. Secretary of*

*Health and Human Services*, 845 F.2d 370, 372 (1st Cir. 1988).

Step two also requires "a claimant to make a reasonable threshold showing that the

impairment is one which could conceivably keep him or her from working."  *McDonald*, 795

F.2d at 1122.  That is, López has the burden of "establishing that [she] has a medically 'severe'

---

[4] "At the second step, we consider the medical severity of your impairment(s).  If you do not have
a severe medically determinable physical or mental impairment that meets the duration requirement in
§404.1509, or a combination of impairments that is severe and meets the duration requirement, we will
find that you are not disabled.  (See paragraph (c) of this section.)"  20 C.F.R. § 404.1520(a)(4)(ii).

"You must have a severe impairment.  If you do not have any impairment or combination of
impairments which significantly limits your physical or mental ability to do basic work activities, we will
find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your
age, education, and work experience.  However, it is possible for you to have a period of disability for a
time in the past even though you do not now have a severe impairment."   20 C.F.R. § 404.1520(c).

impairment – one that 'significantly limits' [her] physical or mental ability to perform 'basic work activities.'" *Santiago Serra v. Secretary of HHS*, 915 F.2d 1556 (1st Cir. 1990) (*quoting* 20 C.F.R. § 404.1520(c)). If López does not make a *de minimis* showing that she has an impairment or combination of impairments severe enough to interfere with her ability to work, then the disability claim is denied. *Yuckert*, 482 U.S. at 141, 153.

López submitted the medical records of the three physicians that treated her during the relevant time period, and claims that the ALJ failed to rely on their opinion and did not explain in the decision the weight given to these medical sources, as required by 20 C.F.R. § 404.1527(d)(2) and SSR 96-2p. (Docket No. 18, p. 3-4, 20). López also argues that the ALJ, "as a lay person, is not qualified to interpret raw data in a medical record." *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 17 (1st Cir. 1996) (citations omitted). Therefore, the ALJ could not conclude that López's mental limitations were not as severe as the treating doctors had reported, and that a medical expert was needed to explain the bare medical data in lay terms. (Docket No. 18, p. 18-19). *See Berríos v. Secretary of Health & Human Services*, 796 F.2d 574, 576 (1st Cir. 1986) (*citing Richardson v. Perales*, 402 U.S. 389, 408 (1971)).[5]

In general, the ALJ must give controlling weight to a medical treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. *Polanco-Quiñones v. Astrue*, 477 Fed. Appx. 745, 746 (1st Cir. 2012); 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. In addition, under the "good reasons" requirement, "the notice of determination must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

_____

[5] López also argues that the testimony of a vocational expert was needed to determine how the erosion of the occupational base undermined the existence of available jobs. (Docket No. 18, p. 18-19). I note that the ALJ did not make a step four or five determination. The evaluation stopped at step two, where the ALJ determined that her condition was non-severe. "If the claimant's impairment is 'non-severe,' then he or she is considered not disabled, without any consideration of age, education, or work experience, and without any further consideration of steps three through five." *McDonald*, 795 F.2d at 1120.

weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p.

In this case, the ALJ explained in the notice of determination that the reason why little weight was afforded to the three treating physicians's opinions was because their treatment records did not contain objective medical findings[6] that established a severe condition that lasted twelve months or evidence of functional restrictions.  (Tr. 16-17).  After reviewing the treatment records, I found that the three medical assessments by the treating physicians indicate that López suffered from a medically determinable mental impairment, but there is no evidence to support a finding that her condition was severe or significantly limited her ability to work.  Dr. Martínez treated López from 1986 to 1987, at which time period she allegedly became disabled, and his record contains a diagnosis of chronic dorsal myositis and nervous crisis, and a recommendation of rest and treatment, but I did not find observations of how he perceived his patient or other medical data.  Three years later, in 1990, López saw Dr. Mojica twice.  This two-page record contains a diagnosis, a brief description of how López felt at the time, and an annotation by the doctor that López appeared "a little tense and depressed" on the first day, and "very uneasy" and anxious during the second visit.  No other observed medical signs were included.  The agency psychiatrist also noted that the medical evidence in the file he received was that of the two visits with Dr. Mojica, and that this evidence was insufficient to assess severity.  (Tr. 382).  Dr. Mojica also submitted a Mental Impairment Evidence Report to the SSA.  Based on his last interview, Dr. Mojica reported that López was markedly depressed, but with no severe impairment in her thought process.  She was oriented, and her intellectual functioning and recent memory were average.  As per 20 C.F.R. § 404.1520a, he reported that López tended towards isolation in

---

[6] Objective medical findings or "medical signs" are defined as "'psychological abnormalities which can be observed' and which 'can be medically described and evaluated.  Such abnormalities, in turn, include 'abnormalities of behavior, mood, thought, memory, orientation, development, or perception.'" *Polanco-Quiñones*, 477 Fed. Appx. at 747 (*quoting* 20 C.F.R. §§ 404.1512(b)(1) and 404.1528(b)).  These are apart from a claimant's own description of her mental impairment.  20 C.F.R. § 404.1528(a)&(b).

relation to activities of daily living, and had no social contacts, interactions with strangers, or participation in group activities.  She had slight difficulty paying attention, was easily distracted, and was unable to persist in a task during a complete work-day without interruptions.  She did not experience work-related periods of deterioration or decompensation, or panic attacks.  (Tr. 316-323).   The ALJ found that López had no limitation in activities of daily living and concentration, persistence, or pace, no more than a mild limitation in social functioning, and no episodes of decompensation, and opined that two visits do not reflect a longitudinal assessment of her mental condition.   The third record available is Dr. Escabí's, who treated her monthly in 1991. This record is for the most part illegible, and I cannot tell whether the legible words contained in the record, such as "crying" and "anxiety," were reported by López or if they were observed by the doctor.

Although the ALJ should give "more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a statement by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine that the claimant is disabled.  That decision is reserved to the Commissioner.  20 C.F.R.  §  404.1527(c)(2)  &  (d)(2).   The record supports the ALJ's determination that these records lack objective medical findings that established a severe condition that lasted twelve months or evidence of functional restrictions.   Additionally, Dr. Mojica's mental impairment report portrays a woman that, although depressed, solitary, and easily distracted, was oriented with average intellectual functioning and no severe impairment in her thought processes.  Also, I found no raw, technical medical data or other evidence of administered clinical and diagnostic techniques in the records of the treating physicians that would require the use of a medical expert to explain the bare medical data in lay terms.  No laboratories or special studies were included in

López-González v. Commissioner of Social Security, Civil No. 13-1216 (BJM)                    12

any of the three records, and Dr. Mojica's mental impairment report specifically states that he did

not order that any studies be performed.

Therefore, after careful review of the administrative record and the briefs on file, I find

that López did not make a *de minimis* showing that her mental condition was severe enough to

interfere with her ability to work.  The record thus supports the ALJ's step two non-disability

determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. Judgment shall be

entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of September, 2014.


*S/Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge